Petition of John OLTMAN, et al., for the Improvement of Judicial Ditch No. 15 in the Counties of Martin and Jackson, Minnesota, Respondents,

v.

Walter Von OHLEN, et al., Appellants.

No. 46869.

Supreme Court of Minnesota.

July 29, 1977.

**2.** See, Webster's Third New International Dictionary (1976) p. 699.

**3.** See, Minn.St. 645.16.

Gislason, Dosland, Malecki, Gislason & Halvorson, and James H. Malecki, New Ulm, Krahmer & Krahmer and Fred C. Krahmer, Fairmont, for appellants.

Johnson, Berens & Wilson and Newton A. Johnson, Fairmont, for respondents.

Heard before PETERSON, MacLAUGHLIN, and PLUNKETT, JJ., and considered and decided by the court en banc.

**PER CURIAM.**

This appeal is from an order of the district court granting a petition to improve Judicial Ditch No. 15 which is located in Martin and Jackson Counties. After consideration of the facts and issues, we affirm.

Pursuant to Minn.St. 106.501,[1] respondents filed a petition with the Martin County District Court in July 1969 seeking to improve Judicial Ditch No. 15. Judicial Ditch No. 15 serves a watershed area of approximately 7,500 acres and drains portions of Jay township and Elm Creek Township in Martin County and Enterprise Township in Jackson County. The improvement sought would enlarge and deepen the present ditch by clearing out over 60 years of silt deposits, thereby furnishing a better outlet to drain the affected farmlands in the area. The ditch, as improved, would follow the route of the existing ditch except in a few places where it would be straightened so as to lie along property lines.

Martin County Ditch No. 1, into which Judicial Ditch No. 15 presently drains, was established by order of the Martin County Board of Commissioners in 1904 as the improvement of an existing stream. In 1910 proceedings were commenced for the construction of the present Judicial Ditch No. 15, using Martin County Ditch No. 1 as an outlet. The construction of Judicial Ditch No. 15 was completed in 1914. At that time, by order of the district court dated September 17, 1912, the engineer was directed to extend the outlet of Judicial Ditch No. 15 downstream into Martin County Ditch No. 1. It is clear from the record that the drainage of the area under consideration in this case has naturally flowed southeasterly for many years prior to the construction of any ditches.

1. Minn.St. 106.501, subd. 1, provides in pertinent part: "Before any public drainage system theretofore established and constructed shall be improved by tiling, enlarging or extending, the following procedure shall be observed. In the case of the improvement of a ditch system lying wholly within the county, a petition signed by not less than 26 percent of the resident owners of the property affected by the proposed improvement or over which the proposed improvement passes or by the owners of not less than 26 percent of the area of the property affected by the proposed improvement or over which the proposed improvement passes shall be filed with the auditor. In the case of a drainage system affecting two or more counties, such petition shall be filed with the clerk of the district court having jurisdiction of the system."

Shortly after the petition to improve Judicial Ditch No. 15 was filed in July 1969, the trial court appointed William Sayre, an engineer, to make a preliminary survey of the condition of the ditch and of the lands likely to be affected by the proposed improvement. On July 27, 1970, a hearing was held on the engineer's preliminary report, and by order of October 4, 1971, the trial court directed the engineer to make a detailed survey and to furnish all necessary plans and specifications for the project. The trial court also appointed three viewers, pursuant to Minn.St. 106.141, to assess benefits and damages to the properties affected by the improvement. A report was also obtained from the director of the Division of Waters, Soils and Minerals in the Department of Natural Resources, as required by Minn.St. 106.131. This report stated that the improvement was compatible with established land use and existing environmental values. A final hearing was held and the improvement was ordered by the trial court on April 28, 1973.

Appellants herein appealed to this court from the April 1973 order alleging defective notice of the proceedings. That appeal was rendered moot, however, when the trial court set aside the April 1973 order on grounds that owners of 40 percent of the land affected by the improvement had not been notified of the preliminary or final hearings.

The proceedings were subsequently continued and after proper compliance with procedures for notification, a new hearing was held by the district court in September 1973, at which time a petition was presented by appellants alleging that the proposed improvement would cause increased water flowage and consequent damages to lands and property downstream. The trial court referred the matter to Sayre, the engineer, for further study, including the question of whether it would be feasible to terminate the improvement at the present end of Judicial Ditch No. 15 rather than to extend it downstream an additional mile along the course of Martin County Ditch No. 1 as had been specified by the district court in its order of April 1973.

A preliminary hearing was held in July 1975, after the engineer had filed his alternate preliminary report. By order of October 10, 1975, the trial court once again found the improvement feasible and practicable, that there was necessity therefor, that it would be of public benefit and would promote the public health, and that the proposed outlet would be adequate. The engineer's alternate preliminary report was approved, and he was directed to make a new detailed survey and to furnish all necessary plans and specifications for terminating the proposed improvement at the outlet of the open portion of Judicial Ditch No. 15 rather than extending it 1 mile downstream on Martin County Ditch No. 1. The same viewers were reappointed to review the land within the watershed in order to establish the benefits and damages to property affected by the improvement.

In April 1976 the final hearing was held to consider the petition. At that time, Sayre, the engineer, testified at length on the proposed improvement. He stated that he anticipated no increase in the flow of water as a result of the improvement since no additional lands were being added to the watershed and no additional water would be drained by the improved system. Although the engineer acknowledged that the water might flow a little faster after the improvement, he anticipated no substantial overflow in Martin County Ditch No. 1 since the total amount of water in Judicial Ditch No. 15 would be the same after the improvement was completed.

Sayre explained that the improvement would be only a repair of the original ditch, as established in 1912, except for a slight change in grade and that the work would consist principally of removal of approximately 4 feet of silt deposits from the existing channel, enabling water to flow more efficiently. He concluded that the proposed improvement would be feasible, practicable, and necessary in order to provide the proper drainage for the cultivation of crops and farmlands within the watershed and that the outlet would be adequate in discharge

capacity to handle the drainage from the farmlands within the watershed.

Darwin Hall, one of the viewers appointed by the district court, gave testimony as to the formula applied by the viewers in assessing the benefits and damages to the property to be affected by the improvement. The viewers found that the total amount of the estimated benefits would be $476,920, and that the benefits would exceed the total estimated cost of the improvement plus damages by $268,220.

In addition, the final report of the director of the Division of Waters, Soils and Minerals in the Department of Natural Resources, was read into the record. The director's report stated that "[t]he proposed improvement to Judicial Ditch No. 15, Martin and Jackson Counties, is essentially the repair of the present drainage system" and that "[i]f the recommended additions are made, the [engineer's] report will substantially comply with Minnesota Statutes Chapter 106."

On May 3, 1976, the trial court issued its final order and found that the proposed improvement "will be of public utility and benefit and will promote the public health and welfare; it is feasible and practicable that the proposed system be constructed and there is a necessity therefor and the outlet is adequate." Further, the trial court found "that the benefits and damages as determined by the viewers * * * are just and correct," and ordered that the petition be granted. The appeal to this court is from that order.

We have concluded that it is unnecessary to discuss at length the issues raised by appellants. In summary we have decided the issues raised by appellants as follows:

■ (a) Appellants maintain that Minn.St. 106.531[2] requires that respondents obtain express authority from the Martin County Board of Commissioners to utilize Martin County Ditch No. 1 as an outlet. However, that statute applies only to *construction* of a ditch "for the drainage of *land not assessed for benefits for such ditch.*" Since the petition herein is for the *improvement* of an existing ditch into which the affected lands have previously been drained, the statute is inapplicable.

■ (b) Appellants contend that the outlet from Judicial Ditch No. 15 into Martin County Ditch No. 1 is inadequate. However, the trial court found the outlet adequate, and the evidence supports that finding. The engineer testified that no additional lands or new water would be drained from the watershed as a result of the improvement. Although he acknowledged that the water might flow at a faster rate, the engineer anticipated no substantial overflow into Martin County Ditch No. 1 as a result of the improvement and no contradictory evidence was submitted by appellants. Therefore, the finding of the trial court is not erroneous.

■ (c) Appellants argue that the viewers improperly assessed the benefits and damages with respect to the improvement. Without detailing the evidence, we hold that there is ample support in the record for the trial court's finding that the damages and benefits "have been duly awarded and assessed by the viewers" and "are just and correct in accordance with the order of the Court."

Other issues raised by appellants have been considered, and we have concluded they are without merit.

Affirmed.

2. Minn.St. 106.531 provides: "After the construction of any county or judicial ditch, no public or private ditch or ditch system, either open or tiled, for the drainage of land not assessed for benefits for such ditch, shall be constructed so as to use the ditch as an outlet without having first secured express authority so to do from the county board, in the case of a system lying wholly within one county, or from the district court of the county in which a system lying wholly within one county was established, in the case where the lands for which an outlet is sought lie within another county, or from the district court that originally ordered the construction, in the case of a system extending into two or more counties. This section shall be applicable to the construction of any ditch or drain that outlets water into an existing county or judicial ditch regardless of actual physical connection. Any person desiring to so utilize an existing ditch shall petition the board or court. * * *"